VERA R. GOYETTE *vs.* ANTHONY SOUSA.
ARMAND J. GOYETTE *vs.* ANTHONY SOUSA.

JULY 24, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. These two actions of trespass on the case for negligence were brought by a husband and wife and arose out of injuries sustained by the wife on the defendant's premises. The cases were tried together by a justice of the superior court, sitting without a jury, who rendered a decision for each plaintiff. In each case the defendant duly excepted to the decision and subsequently prosecuted his bill of exceptions to this court.

On June 16, 1957 plaintiff Vera R. Goyette was injured when her leg went through the metal deck of a pontoon, so called, which was maintained by defendant on his waterfront premises in the town of Warren. At the time of her injury she was with her husband, plaintiff Armand J. Goyette, and was preparing to enter his skiff which was moored to the pontoon.

It is not substantially disputed that defendant was the owner of premises in the town of Warren wherein he conducted wholesale and retail shellfish businesses and also rented dockage space for boats. Upon occasion his wharf was used by a ferry. On the premises defendant maintained two buildings, one set back from the water for the retail sale of prepared sea food for consumption on the premises, and another which extended to the water for use in connection with the wholesale shellfish business. On one side of the buildings there were ramps leading to the water and pontoons or bulkheads which were used for mooring boats.

The plaintiff husband was a part-time shellfisherman. Prior to the date in question he and defendant had entered into an arrangement whereby he would be permitted to moor his skiff at one of the pontoons. He paid no rent for

the privilege of thus using defendant's property other than to agree to sell to defendant all of the shellfish which he might catch. The defendant had similar arrangements with several other shellfishermen who also used his property for docking their boats. At the time in question the husband had been using defendant's docking facilities since November 1956.

On Sunday, June 16, 1957, he returned from shellfishing sometime in the middle of the afternoon and tied his skiff to one of the pontoons. By prearrangement he met his wife on defendant's premises. They decided to go for a ride in the husband's skiff and proceeded toward the water. They walked down the ramp leading to the water and as the wife stepped from the ramp to one of the pontoons her left foot went through the surface of the pontoon which was constructed of iron or steel. The point on the pontoon at which the penetration occurred was rusted and pieces of rust were subsequently removed from her leg.

The trial justice held that the wife was an invitee of defendant and thus he owed to her a duty of maintaining the premises in a condition reasonably safe for the purposes of the invitation. See *Stapleton* v. *Hyman*, 69 R. I. 466. He then found that plaintiffs had sustained the burden of establishing that defendant had negligently breached the duty owed. The principal contentions on this appeal are that as a matter of law the wife was not an invitee on that portion of the premises where she was injured and that there is in the record no evidence of negligence.

With respect to findings of fact, our review herein is governed by the rule that we will not disturb findings by a trial justice sitting without a jury unless it appears that such findings are clearly wrong. *Sal's Furniture Co.* v. *Peterson*, 86 R. I. 203, 133 A.2d 770. We will first consider the question of whether the trial justice was clearly wrong in concluding that the wife was an invitee on that portion of the premises which included defendant's wharf and pontoons.

The evidence establishes that defendant maintained a building for the purpose of selling to the general public sea food to be consumed thereon. On the day in question the plaintiff wife had something to eat on the premises. It is also clear from the record that her husband had been expressly permitted to use that portion of defendant's premises where the wharves and pontoons were located. From an examination of the record it appears that there were no obstructions or similar apparent separations between the portion of the premises where the retail business was conducted and the portion where the wharves and pontoons were located.

During the trial of these cases and in the briefs and arguments before us much stress was placed upon the nature of the express invitation to the husband for the use of the water-front area. There was testimony by him that shortly after he entered into his arrangement with defendant for the use of the premises to moor his skiff, he specifically received permission to bring other persons with him upon the pontoon and the surrounding area. The defendant denied having given specific permission for the use of the aforesaid water-front area by persons other than the husband.

The trial justice found as a fact that defendant had made a specific authorization for the use of the water-front area by persons accompanying the husband. In his decision he stated that the nature of the permission for the use of the premises was general and vague and would reasonably indicate to the husband a willingness on the part of defendant to permit his property to be used without apparent restriction. The trial justice specifically stated that from his view of the testimony any person who was permitted by the husband to enter his skiff was within the broad unlimited terms of defendant's express invitation. It is in the light of these conclusions of fact that we must consider defendant's argument that there is no evidence in the record upon which to found an invitation to the wife.

It is clear that a business invitation to enter premises is not always limited to the individual with whom the invitor is transacting business. *Milliken* v. *Weybosset Pure Food Market*, 71 R. I. 312. This court has also held that an invitation for nonbusiness purposes may exist where affirmative conduct on the part of the landowner has indicated a willingness to permit such use. *Reddington* v. *Getchell*, 40 R. I. 463. A determination of what portions of the premises are included within an invitation in a particular case is a question of fact. *Milliken* v. *Weybosset Pure Food Market, supra.* Upon a review of the record it is our opinion that there was ample evidence to support the conclusion that defendant's general invitation included a permission for the plaintiff wife to use that portion of the premises upon which she was injured.

It is contended that the invitation to her husband for the use of the wharf area was an invitation for business purposes only and that the invitation was limited to such uses of that portion of the property as were directly connected with the husband's shellfishing activities. As we understand defendant's argument, it is further urged that the wife's presence in the wharf area was of no pecuniary benefit to defendant, was in no way connected with the shellfishing activities of her husband for which the invitation was extended, and that therefore her status in the wharf area was that of a trespasser or a licensee. The defendant's argument assumes that the invitation which was extended was limited to the incidents of the business purpose for which it was issued, to wit, shellfishing. The difficulty with this argument is that the evidence does not support such conclusion and the trial justice specifically found otherwise.

While it is true that defendant permitted the use of the pontoons primarily for the purpose of transacting a wholesale shellfishing business, there is testimony which indicates that defendant specifically permitted a general use of the area without apparent limitation. If a general and ambig-

uous express invitation is sought to be limited to a particular portion of the premises, then the invitor must make the limitation apparent to the invitee either expressly or by obstructing or otherwise segregating the limited portion. *Milliken* v. *Weybosset Pure Food Market, supra.*

Based upon the testimony accepted by the trial justice that defendant told the husband it was permissible for him to bring other persons with him into the wharf area, we hold that his wife was an invitee. Having so concluded, it follows that defendant owed the wife a duty to use reasonable care to keep the premises in a condition safe for the purposes of the invitation. *Stapleton* v. *Hyman, supra; Langley* v. *F. W. Woolworth Co.,* 47 R. I. 165.

We will next consider the question as to whether there is in the record before us any evidence which would permit the trial justice to find that plaintiffs had sustained the burden of proving defendant's negligence. The finding of negligence in these cases is based upon alternative grounds: First, that specific negligence can be inferred from the evidence; and secondly, that even if no specific negligence has been proved, the existence of negligence is reasonably inferable under the doctrine of exclusive control as applied in *Coia* v. *Eastern Concrete Products Co.,* 85 R. I. 128, 127 A.2d 858. If plaintiffs could sustain a burden of proof herein without a showing of specific negligence, then this appeal would be disposed of. We will therefore first consider whether in the circumstances negligence can be inferred without a specific showing.

In the *Coia* case this court applied the doctrine that proof of a specific act or omission is not necessary to support a finding of negligence where it is shown that the defendant was in exclusive control of the instrumentality which caused the injury and where the injury would not normally occur in the absence of a negligent act or omission. See also *Bullock* v. *Butler Exchange Co.,* 24 R. I. 50. Ordinarily evidence that an accident occurred does not justify an infer-

16

ence that the defendant was negligent and that his negligence proximately caused the injury. See *Kilgore* v. *Shepard Co.*, 52 R. I. 151.

However, there are certain situations in which, because of the existence of special circumstances, negligence by the defendant is a reasonable inference from the occurrence of a mishap. *O'Donnell* v. *United Electric Rys.*, 48 R. I. 18; *Corbett* v. *Lymansville Co.*, R. I., 69 Atl. 69. In such cases the inference is warranted because the defendant is in exclusive control and management of the instrumentality which causes an injury which would not be expected to occur without negligence. The inference which thus arises is sufficient for a prima facie case. *Coia* v. *Eastern Concrete Products Co.*, *supra*; *O'Donnell* v. *United Electric Rys.*, *supra*.

The application of the above doctrine is premised upon the conclusion that, because of the nature of the incident, negligence occurred and the further conclusion that upon the evidence the defendant was the only one in a position to have been responsible for it. If either of these premises is not warranted by the evidence in a particular case then the doctrine does not logically apply, and in order to sustain his burden of proof the plaintiff must make a specific showing of negligence. See *Kilgore* v. *Shepard Co.*, *supra*. Ultimately the question in any case is whether the showing that has been made demonstrates a likelihood that the particular defendant was in some way negligent.

The exclusive control which must be shown in order to justify the conclusion that the particular defendant was probably negligent is a sufficiently complete domination over the instrumentality as to exclude the probability that any agent other than the particular defendant could have caused the injury. The defendant's domination of the instrumentality must reasonably indicate that regardless of what happened the defendant knew the condition of the instrumentality and knew what went wrong. If the evi-

dence raises a question as to whether the defendant had notice of the defect, then a fortiori the defendant could not have had exclusive control of the instrumentality. It must appear from the evidence that no agent other than the defendant was in a position to participate in the act or omission which constituted the negligence.

In the instant cases defendant owned the pontoon and those who used it did so under a contractual arrangement with defendant. For many purposes, therefore, defendant exercised a legal control over the pontoon. However, in the light of the duty owed in the circumstances here the evidence does not show such a practical physical control which would exclude the likelihood that some other agent participated in the cause of the injury. It is clear from the record that many persons other than defendant used the pontoon in question.

This court has held that a landowner's duty in such circumstances is not that of an insurer. *Stapleton* v. *Hyman, supra*. In our opinion evidence of ownership of the instrumentality by the owner of the premises on which the instrumentality is located does not create a likelihood that a defect therein was due to a breach by the landowner of his duty to an invitee. A defect in an instrumentality does not, without more, create the natural inference that the one who owned it was the only one who could have been responsible for the defect. In *Coia* v. *Eastern Concrete Products Co., supra,* the evidence indicated that the exclusive control of the instrumentality was in fact in a party other than the owner thereof and in that case the showing of exclusive control was a showing of a practical physical domination.

Therefore it is our opinion that the circumstances here do not warrant the application of the doctrine of exclusive control as applied in the *Coia* case. It remains for us to determine whether there is sufficient evidence of the circumstances surrounding the injury to warrant an inference that

18

the defendant negligently breached his duty to maintain the pontoon in a condition reasonably safe for the purposes of the invitation.

The covering of the pontoon was made of metal which gave way when the plaintiff wife stepped upon it. At the point where it gave way it was rusted. From these facts the trial justice concluded that the covering was weakened by wear over a considerable period of time and that because of such weakened condition it was unsafe for invitees.

In reviewing a factual conclusion by a trial justice sitting as a trier of facts, we must regard the limitations imposed by our "clearly wrong" rule. *Sal's Furniture Co.* v. *Peterson, supra.* We must be careful to observe the distinction between an inference which is permissible within the scope of the fact-finding function and one which is unwarranted as a matter of law. In the instant cases it is our judgment that the inference of negligence drawn by the trial justice was permissible and we cannot say as a matter of law that it was clearly wrong. It is, of course, not for this court to decide whether we would draw the same inference from the same evidence.

In each case the defendant's exceptions are overruled, and each case is remitted to the superior court for entry of judgment on the decision.

CONDON, C. J., dissenting. I dissent for the following reasons. The plaintiff Vera R. Goyette predicated her right to recover from the defendant on an alleged "arrangement" between him and her husband whereby the latter was *permitted* to bring other persons with him when he tied up his boat at the defendant's pontoon. This is clear from her declaration and the evidence which she adduced to support it. She does not allege therein that she was a business visitor in her own right. On the contrary she relies solely on the theory that her *permissive* use of the pontoon under her husband's "arrangement" with the defendant gave her the status of an invitee.

It was upon such theory that the trial justice, after finding that defendant had actually extended said *permission,* concluded "that the plaintiff Vera Goyette was not upon the premises as a licensee but was there as an invitee." The majority here concur in that view, for in their opinion they state: "Based upon the testimony accepted by the trial justice that defendant told the husband it was permissible for him to bring other persons with him into the wharf area, we hold that his wife was an invitee."

With that conclusion I cannot agree. In my opinion it makes a mere permission equivalent to an invitation and thus unwarrantably extends the law governing the relationship of invitor and invitee. At common law mere permission without more constituted the user a licensee to whom the owner owed no duty except not to willfully or wantonly injure him. This court has heretofore uniformly adhered to that view. *Previte* v. *Wanskuck Co.,* 80 R. I. 1; *New England Pretzel Co.* v. *Palmer,* 75 R. I. 387; *Davis* v. *Joslin Mfg. Co.,* 29 R. I. 101; *Paolino* v. *McKendall,* 24 R. I. 432; *Beehler* v. *Daniels, Cornell & Co.,* 18 R. I. 563. In each of those cases the plaintiff was denied recovery fundamentally for the reason that the owner was not liable for the mere permissive use of his land by the plaintiff where there was no showing that such use was of any benefit to the owner.

Permission to enter upon land is not an invitation in law. *Fleckenstein* v. *Great Atlantic & Pacific Tea Co.,* 91 N.J.L. 145. For example it is stated in 38 Am. Jur., Negligence §98, at page 759, citing as authority *Douglas* v. *Bergland,* 216 Mich. 380: "The mere fact that a riparian owner points out, to a person using his rollways as a fishing ground, where the owner thinks that fish may be caught, does not make the fisherman an invitee so that the riparian owner will be bound to exercise toward him the care due an invitee." And it has been held that even an express permission does not make one an invitee unless the purpose of the

visit to the owner's premises was for the mutual benefit of the visitor and the owner. In other words the relationship of invitor and invitee does not arise if the entry is solely for the benefit of the visitor. *Parsons* v. *Drake*, 347 Pa. 247.

In the cases at bar plaintiff Vera R. Goyette's use of the pontoon was of no benefit to the defendant. Rather it was solely for her benefit or pleasure. In such circumstances she could not, consistently with the law as this court has heretofore applied it, be deemed an invitee. One who enters upon the land of another for one's own convenience or pleasure is not an invitee but a mere licensee. 38 Am. Jur., Negligence §104, p. 765. In order to establish her status as an invitee it was necessary for her to show that her use of the pontoon was of benefit to the defendant and not merely that her husband had obtained permission to bring her with him whenever he tied up his boat at the pontoon. "As a general rule, mere acquiescence in, or toleration of, an entry into, or use of, premises for purposes in which the owner or occupant has no beneficial interest does not give to the person so entering the status of an invitee." 65 C.J.S. Negligence §43(3)c., p. 513.

Therefore I would sustain the defendant's exception and reverse the trial justice's decision on the ground that it is against the law. And while on such view I do not reach the question discussed by Mr. Justice Frost I nevertheless join in his dissent. I also desire to state that I concur in that portion of the opinion of the majority wherein they overrule the plaintiffs' second count which is based upon the defendant's alleged exclusive control of the instrumentality that caused plaintiff Vera R. Goyette's injury.

FROST, J., dissenting. I am constrained to dissent since I do not share the view of the majority of the court on the question of invitation and negligence. I am of the opinion that plaintiff Vera R. Goyette was a mere licensee and not an invitee and that negligence of the defendant has not

been shown. I wish to discuss at greater length the question of negligence.

Even assuming the plaintiff wife to have been an invitee, it is stated in 38 Am. Jur., Negligence §97, at page 757: "The liability of an owner or occupant to an invitee for negligence in failing to render the premises reasonably safe for the invitee, or in failing to warn him of dangers thereon, must be predicated upon a superior knowledge concerning the dangers of the premises to persons going thereon. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. The owner is liable to invited persons for injuries 'occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public or to those who were likely to act upon such invitation.'" See 1 Shearman & Redfield, Negligence (rev. ed.) §21, p. 45.

The rule as to notice is stated by Mr. Justice Harlan in *Bennett* v. *Railroad Co.*, 102 U. S. 577, at page 580, as follows: "* * * that the owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation."

In *Glenn* v. *Oakdale Contracting Co.*, 257 N. Y. 497, it appeared that the plaintiff Virginia D. Glenn was injured by a protruding spike on a temporary roadway over an excavation in the city of New York. Because the trial court refused to instruct that, before the plaintiff could recover, evidence of the existence of the defect for a sufficient length of time to charge the defendant with actual or constructive

notice was necessary, the Court of Appeals reversed the judgment of the Appellate Division and that of the Trial Term. See also *Molte* v. *Corn Exchange Bank Trust Co.*, 267 N. Y. 544, and *Kilgore* v. *Shepard Co.*, 52 R. I. 151.

In the instant cases it does not appear by any direct evidence that the defendant knew of the condition of the surface of the pontoon where her injury occurred. The trial justice found that it could be reasonably inferred from the evidence that the surface was of such an age that a person stepping upon it would fall through, and also that the condition thereof was not observable to the naked eye of the plaintiff Vera R. Goyette. The trial justice appears to have concluded that the surface was in a state of disrepair for a considerable time because of the rust, pieces of which were taken from plaintiff's leg. It seems to me that such an inference is not tenable since it is common knowledge that even a firm piece of steel could rust overnight.

From a reading of the transcript there appears to be a complete absence of knowledge on the part of the defendant of a defect in the pontoon and absolutely no notice of the defect which caused the plaintiff Vera R. Goyette's injury. In my opinion there should be a decision for the defendant.

### ON MOTION FOR REARGUMENT.
#### OCTOBER 6, 1959.

PER CURIAM. After our decision in the above cases the defendant asked and received permission to present a motion for leave to reargue. Pursuant thereto he has filed such a motion, setting out therein certain reasons on which he bases his contention that justice requires a reargument of the cases.

We have carefully considered all those reasons and we are of the opinion that they are without merit.

Motion denied.

*Rosenstein & Jacques,* for plaintiffs.

*Graham, Reid, Ewing & Stapleton, Edward J. Regan,* for defendant.